FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 03 2018   ★

LONG ISLAND OFFICE

**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**Jeshelton595@gmail.com**

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

RECEIVED

AUG 03 2018

COPY PRO se OFFICE

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia,** | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | |
| **v.** | ) | **No. CV18 4413** |
| **NEST PLANNER LLC** | ) | |
| **133 Harbor Lane** | ) | |
| **Massapequa, New York 11762** | ) | |
| | ) | **BIANCO, J.** |
| **ANTHONY FRISONE, individually and as Chief** | ) | |
| **Executive Officer/Owner of Nest Planner LLC** | ) | **TOMLINSON, M.J.** |
| **133 Harbor Lane** | ) | |
| **Massapequa Pk, New York 11762** | ) | |
| **Defendants** | ) | **Jury Trial Demanded** |

### COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of NEST PLANNER LLC ("Nest Planner") and ANTHONY FRISONE

("Frisone"), ("collectively "defendants"), in negligently and/or willfully contacting Plaintiff via

Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system

("ATDS calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

and related claims that form part of the same claim or controversy. Plaintiff demands a trial by

jury, and complains and alleges as follows:

1

## I.        Introduction

1.     Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.     Plaintiff brings this action to challenge Defendants' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Defendants' and Defendants' agents' illegal telephone solicitations by which they market their products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Defendants' failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.     The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.     "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.     Plaintiff alleges that Defendants placed numerous telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising business loan and/or "merchant cash advance" services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6.     Plaintiff never consented to receive any of these calls.

7.     All of the claims asserted herein arise out of Defendants' illegal telephone solicitation campaign and are a common fact pattern.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

## II.    Jurisdiction and Venue

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.    Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, New York's Nassau County. Defendant Nest Planner LLC is a New York limited liability company with its principal place of business in Nassau County, New York. Defendant Anthony Frisone resides in Nassau County, New York.

## III.    Parties

10.    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 316 Covered Bridge Road, King of Prussia, PA 19406.

11.    Defendant NEST PLANNER LLC ("Nest Planner") is a New York limited liability company with a registered mailing address of 133 Harbor Lane, Massapequa, New York, 11762, and maintains its principal office location at 2097 Wantagh Ave, Wantagh, New York 11793. Nest Planner is not registered to do business in the Commonwealth of Pennsylvania, however, Nest Planner markets and sells, *inter alia*, business loan and/or merchant cash advance products and services to people in Pennsylvania and nationwide.

11.    Defendant ANTHONY FRISONE ("Mr. Frisone") is an adult individual who resides in Nassau County, New York, and may be served at his place of residence, 133 Harbor Lane, Massapequa Pk, New York, 11762. Upon information and belief, Mr. Frisone is the Chief Executive Officer and principal owner of Nest Planner.  Mr. Frisone is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out

3

only in Nest Planner's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in New York, Pennsylvania, and nationwide.

**12.**     At all times herein mentioned, Nest Planner LLC and Anthony Frisone (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

**13.**     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**14.**     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

**Background**

**The Telephone Consumer Protection Act**

**15.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

**16.**     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**17.**     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

**18.**     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

**19.**     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**20.**     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations

5

Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

> *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

**21.**      Under the TCPA, an individual such as Mr. Frisone may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 227 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 227 (emphasis added).

22.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

23.     Defendant Mr. Frisone is personally liable under the "participation theory" of liability because he is the CEO and/or Principal owner of Nest Planner, knew of Nest Planner's violations, and directed employees and/or agents of Nest Planner to continue making those violations.

24.     This is because Defendant Mr. Frisone authorized and oversaw each of Nest Planner's telemarketing processes and calls which were made on behalf of Nest Planner.

25.     Furthermore, Defendant Mr. Frisone is also personally liable because he was responsible for ensuring Nest Planner's agents and/or employees' TCPA compliance.

## IV.     Factual Allegations

26.     Nest Planner provides loans to companies.

27.     Nest Planner uses telemarketing to promote their products and services.

28.     Defendants' telemarketing efforts also includes the use of automated dialing equipment to send automated calls through third parties and their agents, as well as calling cell phone numbers that are listed on the National Do-Not-Call registry for more than 31 days prior to the calls.

7

**29.**     At all times material hereto, Plaintiff was the subscriber of the telephone number 626-524-4255 and paid his cell phone bill through T-Mobile.

**30.**     At all times material herein, Plaintiff received all of the calls complained of in this case on his cellular telephone number, (484) 626-3942. This is the only cellular telephone number Plaintiff owns.

**31.**     Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015 more than 31 days prior to the calls.

**32.**     Plaintiff was in the State of California during the time period in question, June 25, 2018 through June 27, 2018.

**33.**     On June 25, 2018 at 3:08 PM Pacific Standard Time (PST), Plaintiff received an incoming call which displayed on Plaintiff's caller identification as (347) 706-5768. Plaintiff had not consented to this call.

**34.**     The telemarketing call began with a distinctive click and pause after the Plaintiff answered.

**35.**     In fact, while waiting for a human being to arrive on the line, the Plaintiff repeatedly said "hello" into his telephone with no response.

**36.**     Plaintiff then heard a "bloop" sound and a machine noise, which is indicative of a predictive dialer transferring Plaintiff to a live human being. These facts demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

**37.**     When a human being arrived on the phone line, the Plaintiff received a scripted sales pitch about business funding.

**38.**     Plaintiff spoke with Michael "Mike" Falcone, who was an agent and/or employee of Nest Planner.

**39.**     In an attempt to identify who was behind this illegal telemarketing call, Plaintiff asked the caller to send him an e-mail, feigning interest in receiving a loan. When Mr. Falcone asked when would be a good time to schedule a call back, Plaintiff responded "I will call you back if I am interested" but did not give the agent permission to call back.

**40.**     Despite this, Plaintiff got another ATDS-initiated call from 347-706-5768 on June 25, 2018 at 3:12 PM PST. Plaintiff had not consented to this call.

**41.**     Plaintiff again spoke with "Mike" who continued his sales pitch. Plaintiff firmly told the representative that if he was interested, he would give Mike a call back, but did not consent to get any more calls. As a practical matter, Plaintiff was busy and did not want to spend time on the phone talking with a telemarketer.

**42.**     Just a few minutes after Plaintiff got off the phone with Nest Planner, Plaintiff received an e-mail from "Michael Falcone", mike@nestplanner.com, at 3:18 PM PST on June 25, 2018. The e-mail's subject header said: "James, This is Mike from Nest Planner we just spoke about funding for your business."

**43.**     On the following day, June 26, 2018, Plaintiff received seven (7) calls from 516-654-9823, which is listed on Michael Falcone's e-mail as Falcone's direct number.

**44.**     These calls took place in quick succession over the span of three (3) minutes between 1:24 PM and 1:26 PM PST.

**45.**     Plaintiff attempted to answer these calls, however, they would all disconnect a few seconds after Plaintiff answered and said "hello". Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System (ATDS) because there was nobody on the line to

be connected to and because there was machine noise in the background, as well as the incredibly short amount of time to receive call(s) back. Because of their automated nature, such systems often exhibit this abnormal behavior.

**46.**     Intertwined between these seven (7) calls, Plaintiff received a spoofed ATDS-call which displayed on Plaintiff's caller ID as 484-626-3436 at 1:26 PM PST. Plaintiff was not sure who was calling, so again he asked to receive an e-mail. One minute later, at 1:27 PM PST, Plaintiff received an e-mail from mike@nestplanner.com.

**47.**     This call was made using an ATDS because there was a long click and pause prior to when a representative came on the phone line. Additionally, the caller ID was spoofed to a local area code, in an attempt to deceive Plaintiff into thinking someone local was calling him.

**48.**     "Mike" asked when he could call Plaintiff back. Plaintiff told Mike he did not want to receive any more cold calls and if he was interested, he would call Mike back if he had any questions.

**49.**     Despite this clear expression that Plaintiff did not wish to receive any more incoming telemarketing calls from the Defendants, Plaintiff received three more ATDS calls the following day, June 27, 2018.

**50.**     Plaintiff attempted to answer the first two calls, however, they both disconnected a few seconds after Plaintiff answered and said "hello". Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System (ATDS) because there was nobody on the line to be connected to and because there was machine noise in the background, as well as the incredibly short amount of time to receive call(s) back. Because of their automated nature, such systems often exhibit this abnormal behavior.

**51.**     During the third call, which was placed using spoofed caller ID which displayed on

Plaintiff's phone as 484-626-2956, Plaintiff was finally connected to a real person, Mike.

**52.**     This call was made using an ATDS because there was a long click and pause prior to

when a representative came on the phone line. Additionally, the caller ID was spoofed to a local

area code, in an attempt to deceive Plaintiff into thinking someone local was calling him.

**53.**     Plaintiff was busy and told Mike not to call back, before hanging up the phone.

**54.**     The following is a spreadsheet of the calls that Plaintiff received from Nest Planner:

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | |
|---|---|---|---|
| **Date:** | **Time (PST):** | **Caller ID** | **Notes** |
| 6/25/2018 | 3:08 PM | (347) 706-5768 | ATDS call |
| 6/25/2018 | 3:12 PM | (347) 706-5768 | ATDS call, Received an e-mail from mike@nestplanner.com 6 minutes later at 3:18 PM PST |
| 6/26/2018 | 1:24 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:24 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:25 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:25 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:25 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:25 PM | (516) 654-9823 | Hang up call, ATDS |
| 6/26/2018 | 1:26 PM | (484) 626-3436 | ATDS call, spoke to Mike from Nest Planner |
| 6/26/2018 | 1:26 PM | (516) 654-9823 | Received an e-mail from mike@nestplanner.com one minute later |

| 6/27/2018 | 10:06 AM | (516) 654-9823 | Hang-up call, ATDS |
|-----------|----------|----------------|--------------------|
| 6/27/2018 | 10:18 AM | (516) 654-9823 | Hang-up call, ATDS |
| 6/27/2018 | 10:19 AM | (484) 626-2956 | ATDS call, spoke to Mike, told him not to call back |

**55.** Prior to these unsolicited calls, the Plaintiff has never done any business with Nest Planner and Plaintiff never provided one or more of Defendants with his cellular telephone number.

**56.** Defendants did not have the Plaintiff's prior express written consent to make these calls.

**57.** In fact, prior to filing this lawsuit, Plaintiff wrote to Nest Planner asking if they had his prior express consent to receive telemarketing calls, but Defendants did not provide any evidence of consent.

**58.** Plaintiff requested in an e-mail to receive a copy of the defendants' internal company Do-Not-Call policy.

**59.** Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**60.** Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**61.** Pursuant to 47 CFR 64.1200(c)(2)(C), a telemarketer is required to maintain a "do not call list" of telephone numbers that the seller may not contact. Pursuant to 47 CRF 64.1200(d), a telemarketer must put a person's number on the do-not-call list if that person requests not to receive telemarketing calls made by or on behalf of that person or entity.

**62.** Defendants failed and/or refused to put Plaintiff's number on Nest Planner's internal company "Do-Not-Call list".

**63.** To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on National do-not-call rules, training personnel on National do-not-call rules, maintaining an internal do-not-call list, and accessing the National do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Defendants inquiring about the calls before filing this lawsuit.

**64.** Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**65.** Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal and residential purposes.

**66.** These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**67.** Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating,

obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused
Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from
otherwise using his telephone for lawful purposes.

## Causes Of Action

## First Cause of Action

(Negligent Violation of the TCPA "ATDS call" Prohibition, 47 U.S.C. § 227 et seq.)

**68.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

**69.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C.
§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every
violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**70.**     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting
such conduct in the future.

## Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS call" Prohibition, 47 U.S.C. § 227 et seq.)

**71.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

**72.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations
of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute,
up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

**73.**     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

14

such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**74.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**75.**     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**76.**      Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**77.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**78.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**79.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fifth Cause of Action

15

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**80.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**81.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**82.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**83.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**84.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**85.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

16

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**86.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**87.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private right of action.

**WHEREFORE, Plaintiff prays for relief against defendants, as follows:**
**V.     Prayer for Relief**

On Causes of Action 1-8:

  1.  For awards of $500 for each negligent violation as set forth in actions 1-8.

  2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions
1-8.

  3.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **$42,000** (Thirteen (13) counts each of "Sales call to a number registered

on the National Do-Not-Call Registry", "ATDS call", and one (1) count each of "Failure to Put

Plaintiff's Number on Defendants' Do-Not-Call list", and "Failure to provide a copy of

Defendant's Do-Not-Call Policy", with treble damages for each.)

  4.  Prejudgment interest at the maximum legal rate;

  5.  Costs of suit herein incurred; and

  6.  All such other and further relief as the Court deems proper.

## VI.     **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 1, 2018

James E Shelton

James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
Jeshelton595@gmail.com

Plaintiff, Pro Se

18